Michael Machat, Esq. SB#109475
MACHAT & ASSOCIATES, P.C.
8730 W. Sunset Blvd., Suite 250
West Hollywood, California 90069
Telephone: (310) 860-1833
Email:  info@machatlaw.com

David A. Randall (SBN 156722)
dave@hdmnlaw.com
Ehab Samuel (SBN 228296)
esamuel@hdmnlaw.com
HACKLER DAGHIGHIAN MARTINO & NOVAK P.C.
10900 Wilshire Blvd., Suite 300
Los Angeles, CA 90024
Tel.: (310) 887-1333
Fax: (310) 887-1334

Attorneys for Plaintiff
Vampire Family Brands, LLC

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| VAMPIRE FAMILY BRANDS, LLC, | CASE NO. |
| Plaintiff, | **COMPLAINT FOR TRADEMARK INFRINGEMENT; FALSE ADVERTISING; UNFAIR COMPETITION and COUNTERFEITING.** |
| vs. | |
| PERVINO, INC (aka PERSONAL WINE) et al., and DOES 1 – 10, | |
| Defendants. | **DEMAND FOR JURY TRIAL** |

Plaintiff VAMPIRE FAMILY BRANDS, LLC hereby alleges and asserts:

## I. JURISDICTION AND VENUE

1. Plaintiff brings this action for injunctive relief and damages arising out of the unauthorized, unfair, and deceptive competitive practices of Defendants, and each of them, in connection with the commercial use and exploitation of trademarks in violation of the Lanham Act.

2. This action arises under the Trademark Laws of the United States, including particularly, Section 43 of the Lanham Act, 15 U.S.C. §1125. Jurisdiction is conferred on this Court by 15 U.S.C. Section 1121(a), by 28 U.S.C. Section 1338(a), in that this case arises under the Trademark Laws of the United States, 15 U.S.C. Sections 1051, *et seq.*, and by principles of pendent jurisdiction. Venue is proper in this District under 28 U.S.C. §§ 1391(b).

3. This Court has specific jurisdiction over Defendants as to these claims pursuant to due process and the California Long Arm Statute because these claims arise from Defendants' acts or omissions (directly or through intermediaries) in this judicial District. This Court has general jurisdiction over Defendants as Defendants produce and bottle their wine, including their counterfeit wine, in Napa, California.

## II. THE PARTIES

4. Plaintiff VAMPIRE FAMILY BRANDS, LLC ("Vampire Family Brands") is a Delaware Limited Liability Company located in Ventura County, California.

5. Defendant Pervino, Inc, ("Pervino") is upon information and belief, a Texas Corporation doing business as Personal Wine, out of Napa, California.

6. Plaintiff does not know the true names or capacities of defendants named herein as DOES 1 through 10 inclusive, and therefore sues these defendants by such fictitious names. Plaintiff will seek leave to amend this Complaint to allege the true names, capacities, and circumstances alleging the liability of said

defendants at such time as the same is ascertained. Plaintiff is informed and believes and, on that basis, alleges that each fictitiously named defendant is responsible in some manner for the occurrences herein alleged and that Plaintiff's damages as herein alleged were proximately caused by the conduct of such defendants.

7. At all times herein mentioned, Plaintiff is informed and believes and based thereon alleges that, at all times herein mentioned, each of the defendants sued herein, were the agents, servants, employees or attorneys of their co-defendants, and in doing the things hereinafter alleged were acting within the purpose, course and scope of such agency and employment, and with the authority, permission and consent of their co-Defendants.

8. Defendants produce and bottle wine in Napa, California.

9. Defendants, directly or through intermediaries, sell, offer for sale, distribute, and advertise wine, including Counterfeit Dracula wine, in direct competition with that of Vampire Family Brands and of Vampire Family Brands' authorized retailers.

10. Defendants, directly or through intermediaries, purposefully and voluntarily place their Counterfeit wine into the stream of commerce with the expectation that their Counterfeit wine will be purchased by consumers in California and in this judicial District.

11. Defendants offer the accused counterfeit product on their website, www.personalwine.com.

12. The Counterfeit wine has been purchased by consumers in California and in this judicial District.

13. In fact, not so long ago, Plaintiff purchased one of Defendants' counterfeit wines from Defendants' website, www.personalwine.com. When Defendants' counterfeit wine was delivered to Plaintiff in Los Angeles, Plaintiff noticed the back label of Defendants' counterfeit wine discloses that Defendants

make their wine in Napa, California

14. Defendants regularly advertise their counterfeit products online and pay Google to use Plaintiff's brand, "Vampire Wine" as an ad-word to divert consumers to Defendants' counterfeit Dracula wine.

15. Defendants might protest that their counterfeit Dracula label looks different from Plaintiff's current Dracula label. However, that flimsy excuse ignores that Plaintiff often changes up its packaging and relies upon its word marks VAMPIRE and/or DRACULA, to inform consumers about the source and origin of its wine. So as a result of defendants' counterfeiting activities, consumers naturally would think they are buying a genuine DRACULA wine produced by Plaintiff when in fact it is a counterfeit even if the illustrations are different.

16. Defendants' advertising brings up a picture of their counterfeit product, and when a consumer clicks on the unlawful ad, the link brings them to Defendants website from which consumers are enticed to purchase the counterfeit Dracula wine.

17. Defendants began selling, offering for sale, distributing, and advertising their Counterfeit Dracula wine after the Vampire Family Brands' VAMPIRE mark became famous and distinctive and after Vampire Family Brands began selling wines branded with and under its registered trademark DRACULA.

18. **Defendants** willfully place their Counterfeit Dracula Wine into the stream of commerce with the expectation that it will be purchased by consumers in California and in this judicial District.

### III. FACTS GIVING RISE TO THIS ACTION

19. Plaintiff VAMPIRE FAMILY BRANDS via its predecessors in interest has been marketing food and beverages under the following brand names for many years, including: VAMPIRE (for wines – US Trademark Registration No.

4

2263907); DRACULA (for wine – US Trademark Registration No. 3319536); VAMPYRE (for Spirits – US Trademark Registration No. 3082097); FANGRIA (for sangria and wine – US Trademark Registration No. 85102493); VAMPIRE (for chocolate and coffee - US Trademark Registration No. 3669827); VAMPIRE (for Restaurant and Bar Services – US Trademark Registration No. 3978444); and many more under the VAMPIRE mark, including VAMPIRE (for Glass beverage-ware -- US Trademark Registration No. 3290011); VAMPIRE (for tacos – US Trademark Registration No. 4939034) and VAMPIRE (for hamburgers – US Trademark Registration No. 6329522).

20. By virtue of its extended use in commerce, several of the aforementioned registrations have become incontestable, including its registration numbers 2263907, 3082097, 3290011, 3319536, 3669827, and 3978444.

21. VAMPIRE FAMILY BRANDS also is the owner of the slogans TASTE OF IMMORTALITY and SIP THE BLOOD OF THE VINE, (TM Registrations 3167606 and 3079403, respectfully.) Both of these marks also have become incontestable.

22. The origin of Vampire wine, and VAMPIRE FAMILY BRAND's claim of right goes back to 1988, when its founder released a French bottled Algerian Syrah under the brand name Vampire. The first sale was to MCA Records and Alice Cooper, and the wine was promoted under the slogan, "Sip the Blood of the Vine." Vampire Family Brand's predecessors in interest began to use the slogan "Taste of Immortality" by at least 1995, if not earlier. Although the labels have changed over the years, along with the sourcing from Algeria to Italy to Transylvania and finally to Napa, the marketing has remained playful.

21. However, as the source of the wine shifted from Transylvania, Romania to Napa, California, the marketing evolved to emphasize that the quality of the wine was actually extremely good, with Vampire wine having won numerous gold medals throughout the years and winning scores of 90 Points and higher.

5

22. Plaintiff's VAMPIRE family of brands are available for the world to see on its website VAMPIRE.COM, and Plaintiffs' family of VAMPIRE Brands have received coverage in various national magazines and newspapers, including Maxim, InStyle, Elle, Shape, Star Magazine, the New York Times, the LA Times, the Houston Chronicle, The Star Tribune, The Chicago Sun Times, and many more. In addition, Plaintiffs' VAMPIRE family of brands have been shown on various national television shows, such as The View with Oprah Winfrey, Anderson Cooper for approximately five minutes with Ashley Greene from Twilight fame, CNN Headline News, MTV's Viva La Bam, Food TV, and many more.

23. Plaintiff has been selling its DRACULA wine since at least 2007, and its trademark registration has become incontestable.

24. Plaintiff sources its DRACULA wine out of Napa, California.

25. In October of this year, Plaintiff did a google search for its brand "vampire wine" and notice that Defendants had a paid listing for a counterfeit wine named Dracula. Plaintiff investigated and learned that Defendants were indeed selling counterfeit wine under Plaintiff's DRACULA brand name, and Plaintiff investigated. (Please see Exhibits A and B.)

26. Within the last forty-five days, Plaintiff went onto Defendants' www.personalwine.com website and purchased and received in Los Angeles, California, one bottle of Defendants' counterfeit Dracula wine. After receiving the counterfeit wine, in November of this year, Plaintiff again did a google search for "vampire wine" and saw that Defendants were still unlawfully advertising their wine using the counterfeit DRACULA designation. (Please see Exhibit C.)

27. Plaintiff markets its brands through a national network of wholesalers, and via the website: www.vampire.com. It's VAMPIRE wine sells for anywhere between $10 to $15 per bottle nationally at retail stores, and its DRACULA wine sells for anywhere between $15 and $30 nationally and at retail stores. Both VAMPIRE wine and DRACULA wine are also available in bars and restaurants on

wine lists. Plaintiff's VAMPIRE, DRACULA and TRUEBLOOD wines are often marketed together, like a family, as seen in Exhibit D, a picture taken from Plaintiff's website www.vampire.com showing Plaintiff's Vampire Pinot Noir Trio featuring images of Vampire Pinot Noir, Dracula Pinot Noir and Trueblood Pinot Noir. A picture of Plaintiff's Dracula Trilogy, taken from vampire.com and consisting of a bottle of Dracula Pinot Noir, Dracula Merlot and Dracula Sparkling Rose, is attached as Exhibit E.

28. Plaintiff and its associates have worked hard to ensure that they make the best products possible under the VAMPIRE and DRACULA brands. In addition to only using the finest coffee in its VAMPIRE coffee products, the finest Belgium chocolate in VAMPIRE chocolate products, and making exceptional VAMPYRE vodka that has garnered positive critical reviews, over the last few years, Plaintiff's Vampire family of wines have received some great reviews and have won Gold Medals, including Gold Medals at the San Francisco Chronical Wine Competition for its Vampire Merlot, Vampire Cabernet Sauvignon, Vampire Pinot Noir, a Gold Medal and 92 Rating from the Los Angeles International Wine & Spirits Competition awarded to Vampire Cabernet Sauvignon, Gold Medals at the Texas International Rodeo Wine Competition, and 92 and 97 point ratings for its highest end Trueblood Cabernet Sauvignon.

29. Plaintiff has spent substantial amounts of time and money building up, advertising, and promoting its VAMPIRE branded products. By virtue of the popularity of its VAMPIRE branded products, its advertising, promotion, and sales, plus the popularity of its websites, including vampire.com, Plaintiff has built up and owns extremely valuable goodwill which is symbolized by Plaintiff's various VAMPIRE family of marks, including the DRACULA mark.

30. Defendants' intentional wrongful acts are harming Plaintiff's VAMPIRE family of branded products and reputation and are diluting the brands.

7

31. If defendants are not stopped from marketing, advertising and selling wine using the counterfeit Dracula designation, then consumers will likely be confused about the source and origin of Defendants' products and services and mistakenly conclude that Defendants' products or services are produced by, or associated with Plaintiff and/or its licensees.

32. Alternatively, if Defendants are not stopped from marketing, advertising and selling wine using the counterfeit Dracula designation, then consumers will likely be confused about the source and origin of Plaintiff's (or its licensees') products and services and mistakenly conclude that Plaintiff's (or its licensees') products or services are produced by, or associated with Defendants.

## COUNT I
## VIOLATION OF LANHAM ACT 15 U.S.C. §1125(a)

33. Plaintiff realleges the allegations in paragraphs 1 though 32.

34. Defendants' use of the mark DRACULA makes its wine a counterfeit of Plaintiff's DRACULA wine and it otherwise so closely resembles Plaintiff's products that the public is likely to be confused and deceived, and to assume erroneously that defendants' goods are those of Plaintiff, or that defendants are in some way connected with, sponsored by, or affiliated with Plaintiff, all to Plaintiff's detriment and irreparable damage.

35. Since the name of defendants' counterfeit wine is the same as the name of Plaintiff's DRACULA wine, and since the products are both wine and both sold through online channels, if defendants are able to continue their wrongful acts, it is only natural for consumers to mistakenly come to believe and it is likely that consumers will believe that any defect or flaw in Defendants' wine is the fault of Plaintiff. As a result, Plaintiff's reputation and goodwill will be impaired.

36. Defendants are not affiliated with, connected with, endorsed by, or sponsored by Plaintiff, nor has Plaintiff approved or authorized any of the goods or

services offered or sold by defendants.

37. Plaintiff has no control over the nature and quality of the goods and services offered and sold by defendants or its licensees. Any failure, neglect, or default by defendants or its licensees in providing such products or services will reflect adversely on Plaintiff as being the believed source of said failure, neglect, or default, thereby hampering Plaintiff's efforts to continue to protect its outstanding reputation and preventing Plaintiff from further building its reputation. Said failure, neglect, or default will result in loss of revenue by Plaintiff, and loss of value of Plaintiff's considerable expenditures to promote its goods and services under both the DRACULA mark and the VAMPIRE mark, all to the irreparable harm of Plaintiff.

38. Without the knowledge or consent of Plaintiff, Defendants have marketed and sold in interstate commerce, and in commerce substantially affecting interstate commerce, counterfeit wine branded under the DRACULA mark and continue to do so. Defendants have promoted, publicized, advertised, offered for sale, and/or sold, wine using the DRACULA mark through persons not authorized, employed by, or associated in any way with Plaintiff and have used the aforementioned trade name and trademark as a false designation and false representation for beverage products.

39. None of Defendants' activities complained of in this complaint have been authorized by Plaintiff, and such unauthorized use by Defendants of Plaintiff's trademarks and/or trade names in interstate commerce, commerce substantially affecting interstate commerce in this district, and elsewhere throughout the United States, constitutes infringement and an inducement to infringe Plaintiff's trademarks and/or trade names, and such activities are likely to cause confusion, mistakes, and to deceive the public at large.

40. Upon information and belief, Defendants have acted with the unlawful purpose of:

9

    a. Improperly taking advantage of the valuable goodwill belonging to Plaintiff;

    b. Soliciting Plaintiff's customers and/or potential customers, attempting to sell, and selling to such customers and potential customers, goods and services marketed under the DRACULA mark through persons not authorized by, employed by, or associated in any way with Plaintiff;

    c. Inducing others to infringe Plaintiff's trademarks and trade names; and

    d. Causing the goods of persons not authorized by, employed by, or associated in any way with Plaintiff to be falsely represented as if they were rendered, authorized, sponsored by, endorsed by, or otherwise connected with Plaintiff and its licensed trademarks and trade names.

41. Defendants' conduct, as alleged in this complaint, constitutes a violation of 15 U.S.C. § 1125(a).

42. If Defendants are allowed to continue marketing and selling the counterfeit wine, Plaintiff will be damaged as alleged in this complaint, and the Defendants will profit thereby. Furthermore, unless the Court permanently enjoins Defendants conduct as alleged in this complaint, Plaintiff's business, goodwill, and reputation will suffer irreparable injury of an insidious and continuing sort that cannot be adequately calculated and compensated in monetary damages.

43. Defendants' aforementioned acts and conduct is being done willfully and with an intent to ride on, and/or step on and demolish, the goodwill Plaintiff has worked hard to develop. Plaintiff is therefore entitled to treble damages arising therefrom, as well as reimbursement of Plaintiff's attorneys' fees and costs.

44. The intentional nature of defendant's acts makes this an exceptional

case under 15 U.S.C. §1117(a).

45. The intentional nature of defendant's acts and conduct makes this a case suitable for an award of Three Times Defendants' profits, plus Plaintiff's attorneys fees.

## COUNT II
## VIOLATION OF LANHAM ACT 15 U.S.C. §1114

46. Plaintiff repeats each allegation contained in paragraphs 1 through 45 as though set forth herein at length.

47. Defendants have engaged in, and continue to engage in, the wrongful exploitation of Plaintiff's registered marks.

48. Defendants' goods are so closely related to Plaintiff's goods that the public is likely to be confused, to be deceived, and to erroneously assume that Defendants' marketing and sale of their Counterfeit DRACULA branded wine, as packaged, advertised and promoted, is made by Plaintiff, or that Defendants are in some way connected with, sponsored by, or affiliated with Plaintiff, all to Plaintiff's detriment and irreparable damage.

49. Defendants are not affiliated with, connected with, endorsed by, or sponsored by Plaintiff.  Furthermore, Plaintiff has not approved any of the wine offered or sold by Defendants.

50. Defendants aforesaid infringing conduct has been willful and with an intent to ride on, and/or step on and demolish, the goodwill Plaintiff has worked hard to develop.  Defendants' aforesaid infringing conduct has been willful and with knowledge that the sale, marketing, advertisement, and promotion of their counterfeit DRACULA wine will hinder the prospects of future commercial success of Plaintiff's VAMPIRE family of brands, including its further foray into the beverage, cocktail, food and restaurant space.  Plaintiff is therefore entitled to treble damages arising therefrom, as well as reimbursement of Plaintiff's attorneys' fees and costs.

51. Alternatively, Plaintiff seeks statutory damages up to Two Million Dollars for Defendants' willful counterfeiting pursuant to 15 U.S.C. § 1117 (c).

## COUNT III
## VIOLATION OF LANHAM ACT 15 U.S.C. §1125(A) FOR FALSE ADVERTISING

52. Plaintiff repeats each allegation contained in paragraphs 1 through 51 as though set forth herein at length.

53. Defendants pay google to advertise wine using the term "vampire wine" as a keyword. Defendants' ads bring up a picture of its counterfeit Dracula wine.

54. When consumers click on the counterfeit image brought up on the google search as a result of defendants' unlawful ad, they are taken to Defendant's website where consumers are deceived into buying Defendants' counterfeit Dracula wine.

55. Defendants' deceptive marketing of their products in commercial advertising and promotions, misrepresents the true source and origin of their products.

56. On information and belief, as a result of the false advertising of the Defendants, consumers are also deceived into buying what turns out to be a counterfeit product. Instead of purchasing Plaintiff's authentic DRACULA wine, consumers are shipped Defendants' Counterfeit Dracula wine

57. As such, defendants' marketing, promotion and sales of wine violate the false advertising provisions of 15 USC 1125 (a).

58. Defendants' aforesaid false and misleading marketing has been willful and with knowledge that the sale, marketing, advertisement, and promotion of their wine unlawfully advertised as Dracula Wine interferes with and hinders the prospects of future commercial success of Plaintiff's VAMPIRE family of brands,

including its sales of DRACULA wine, VAMPIRE wine and FANGRIA.

## COUNT IV
### UNFAIR COMPETITION – COMMON LAW, AND CALIFORNIA BUSINESS & PROFESSIONS CODE §§ 17200 et seq.

59. Plaintiff repeats each allegation contained in paragraphs 1 through 58 as though set forth herein at length.

60. Defendants have engaged in unfair competition perpetrated against Plaintiff by reason of the conduct alleged herein.

61. The unlawful and unfair conduct is injuring the goodwill of Plaintiff and its lawful licensees.

62. Defendants are liable for the unfair competition, and/or are liable for aiding and abetting such conduct.

63. By this conduct, Plaintiff has directly suffered injuries and each Defendant has been unjustly enriched.

64. Plaintiff is entitled to restitution, the recovery of damages, and the recovery of the profits earned by Defendants by virtue of their conduct.

65. As a consequence of the unfair competition by Defendants, Plaintiff is suffering irreparable injury, by reason of which such conduct should be enjoined.

66. Plaintiff is entitled to reasonable attorneys' fees.

67. Plaintiff is informed and believes, and on that basis alleges, that the aforementioned conduct of Defendants is willful, oppressive, fraudulent, and malicious, and Plaintiff is therefore entitled to punitive damages.

## COUNT V
### UNFAIR COMPETITION – COMMON LAW, CALIFORNIA BUSINESS & PROFESSIONS CODE §§ 17500 et seq.

68. Plaintiff repeats each allegation contained in paragraphs 1 through 67 as though set forth here at length.

13

69. Defendants' use of Plaintiff's family of VAMPIRE brands and trademarks misrepresents the nature, characteristics, identity, and source or sponsorship of Defendants' goods and services, constitutes aiding and abetting liability for deceptive, untrue, and misleading advertising and therefore constitutes a violation of, inter alia, California Business and Professions Code §§17500 et seq. and California common law.

70. Defendants' use of Plaintiff's family of VAMPIRE brands and trademarks is likely to deceive and will continue to deceive the consuming public. Defendants knew, recklessly disregarded, or reasonably should have known that such packaging, advertising, marketing, and promotion was untrue and/or misleading.

71. As a result of the conduct described above, Defendants have been and/or will be unjustly enriched at the expense of Plaintiff and the general public. The interests of the general public and Plaintiff are, therefore, closely related.

72. Defendants have been unjustly enriched, among other things, by the receipt of sales revenues from consumers who mistakenly thought that they were purchasing Plaintiff's DRACULA wine or goods and/or goods sponsored by Plaintiff, but instead were purchasing Defendants' goods which are promoted and sold through advertisements that affirmatively misrepresent, either directly or by implication, the nature, characteristics, identity, and source or sponsorship of the goods.

73. Pursuant to Business and Professions Code §§ 17203 and 17535, Plaintiff, on behalf of itself and the general public, which is unable effectively to assert its interests, seeks an order of this Court ordering Defendants immediately to cease such acts of unfair competition and false advertising, and enjoining Defendants from continuing to market, promote, advertise, offer for sale, and sell, and advertise goods or services using the Dracula mark or the related Vampire mark. Plaintiff additionally requests an order disgorging Defendants' ill-gotten

gains and restitution of all monies wrongfully acquired by Defendants by means of its acts of unfair competition and false advertising.  Plaintiff further requests they be paid interest and attorneys' fees.

**WHEREFORE, Plaintiff prays for judgment as follows:**

1.  That the Court adjudge and decree that Defendants have falsely designated the origin of certain goods and services as those of Plaintiff, have made and used false representations in connection with the sale, offering for sale, promotion and advertising of such goods and services, and have unfairly competed with Plaintiff at common law.

2.  That the Court adjudge and decree that Defendants have infringed Plaintiff's registered DRACULA and VAMPIRE trademarks.

3.  That the Court adjudge and decree that Defendants unlawfully diluted, tarnished and diminished Plaintiff's rights in its VAMPIRE family of trademarks.

4.  That the Court adjudge and decree that Defendants unlawfully induced others to infringe upon Plaintiff's trademarks.

5.  That the Court permanently enjoin Defendants, its agents, servants, employees, attorneys, and all persons acting in concert or participation with them, or with any of them from:

   a. Using DRACULA or VAMPIRE, or any other word or words which are similar to, or a colorable imitation of, Plaintiff's trade names and marks, either alone, as part of, or together with, any other word or words, trademark, service mark, trade name, or other business or commercial designation in connection with the sale, offering for sale, advertising, and/or promotion of food or beverages;

   b. Selling, offering to sell, marketing, distributing, advertising and/or promoting any food or beverage product, goods or service with the

word DRACULA or VAMPIRE displayed on any product, packaging, advertising or promotional materials;

c. Representing directly or indirectly by words or conduct that any food product, goods or services offered for sale, sold, promoted, or advertised by Defendant, is authorized, sponsored by, endorsed by, or otherwise connected with Plaintiff;

d. Aiding or abetting in unfair competition against Plaintiff;

e. Aiding or abetting in false advertising; and

f. Inducing others to engage in any of these aforementioned acts.

6. That the Court award an amount to be determined at trial but at least an amount equivalent to treble the amount of Defendants' illicit profits or Plaintiff's lost profits, whichever is greater.

7. Alternatively, Plaintiff requests that the Court award Plaintiff statutory damages of Two Million Dollars for Defendants' willful counterfeiting pursuant to 15 U.S.C. § 1117 (c).

8. In addition, that the Court award an amount to be determined at trial but at least an amount equal to the cost of prospective corrective advertising to cover a national campaign at least ten times the size of defendant's unlawful promotional campaign.

9. That the Court award Judgment against Defendant for the full costs of this action, including the attorney's fees reasonably incurred by Plaintiff.

10. That the Court Order such other, further and different relief as the nature of this action may require and as the Court may deem just and proper.

11. That the Court retain jurisdiction of this action for the purpose of enabling Plaintiff, in its discretion, to apply to this Court at any time for such further orders and directions as may be necessary or appropriate for the interpretation or execution of any Order entered in this action, for the modification of any such Order, for the enforcement of compliance therewith, and/or for the

punishment of any violation thereof.

Respectfully submitted,
MACHAT & ASSOCIATES, P.C.

Dated: December  9 , 2021     By: *Michael Machat*
Michael Machat, Esq.
Attorneys for Plaintiff
Vampire Family Brands, LLC

Michael Machat, Esq. (SBN 109475)
michael@machatlaw.com
MACHAT & ASSOCIATES, P.C.
8730 W. Sunset Blvd., Suite 250
West Hollywood, California 90069
Tel.: (310) 860-1833

David A. Randall (SBN 156722)
dave@hdmnlaw.com
Ehab Samuel (SBN 228296)
esamuel@hdmnlaw.com
HACKLER DAGHIGHIAN MARTINO & NOVAK P.C.
10900 Wilshire Blvd., Suite 300
Los Angeles, CA 90024
Tel.: (310) 887-1333
Fax: (310) 887-1334

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby requests a trial by jury on all issues raised by the Complaint.

Respectfully submitted,
MACHAT & ASSOCIATES, P.C.

Dated: December  9 , 2021     By: *Michael Machat*
Michael Machat, Esq.
Attorneys for Plaintiffs
Vampire Family Brands, LL

17